UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
AT CHATTANOOGA

| | | |
|---|---|---|
| PATRICIA HEINER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | No. 1:11-cv-28 |
| v. | ) | |
| | ) | *Collier / Lee* |
| COMMISSIONER OF SOCIAL SECURITY, | ) | |
| | ) | |
| Defendant. | ) | |

## REPORT AND RECOMMENDATION

Plaintiff Patricia Heiner brought this action pursuant to 42 U.S.C. §§ 405(g) seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her supplemental security income ("SSI") benefits. Plaintiff and Defendant have both moved for judgment [Docs. 9, 11]. Plaintiff argues that the Commissioner's decision should be reversed and benefits awarded because the Administrative Law Judge ("ALJ") failed to afford appropriate weight to the opinion of a treating source and erred in finding Plaintiff could perform unskilled, light work with occasional contact with people in light of her disabling mental conditions. For the reasons stated below, I **RECOMMEND** that (1) Plaintiff's motion for judgment on the pleadings [Doc. 9] be **DENIED**; (2) the Commissioner's motion for summary judgment [Doc. 11] be **GRANTED**; and (3) the decision of the Commissioner be **AFFIRMED**.

I.  **ADMINISTRATIVE PROCEEDINGS**

Plaintiff initially filed her application for SSI on November 26, 2007, alleging disability as of July 1, 2007 (Transcript ("Tr.") 127-130). Plaintiff's claim was denied initially and upon reconsideration and she requested a hearing before the ALJ (Tr. 54-69). The ALJ held a hearing on September 17, 2009, during which Plaintiff was represented by an attorney (Tr. 25-51). The ALJ

issued his decision on October 13, 2009 and determined Plaintiff was not disabled because there were jobs she could perform in the national economy (Tr. 13-24). The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final, appealable decision of the Commissioner (Tr. 1-3, 10-12). Plaintiff timely sought judicial review of the Commissioner's final decision [Doc. 1].

## II.   FACTUAL BACKGROUND

### A.   Education and Background

Plaintiff was 48 years old, a younger individual, at the time of the hearing and the ALJ's decision (Tr. 28). Plaintiff had completed high school and two years of college in fashion merchandising (Tr. 29). Plaintiff testified that she received chronic pain treatment for degenerative disc disease and that she was told it was a debilitating disease, which would get progressively worse, prompting her to apply for benefits (Tr. 30). After the disability onset date, Plaintiff worked part-time for a couple of months tending bar at a golf club (Tr. 30-31). At the time of the hearing, Plaintiff was living with her sister and brother-in-law and had been separated from her husband for over three years (Tr. 31). Plaintiff did her own cooking at her sister's home and went to the grocery store once a month, but her sister did all the cleaning and did Plaintiff's laundry (Tr. 32-33).

Plaintiff testified she suffered from degenerative disc disease, which caused her to have problems sitting and standing, with pain in her neck, shoulders, lower back, and tailbone (Tr. 34). Plaintiff also had fibromyalgia which caused her to have what felt like "electric jolts" going through her body (Tr. 35). Finally, Plaintiff had problems grasping with her right hand (Tr. 37). Plaintiff testified she could not sit comfortably for more than five or 10 minutes without shifting position; she had problems standing for more than five or 10 minutes and sometimes stood on one leg to take

Case 1:11-cv-00028-CLC-SKL   Document 13   Filed 12/01/11   Page 2 of 15   PageID #: 48

pressure off of her back; she could walk for 30 minutes at a time but sometimes had to sit and rest before continuing; she could not lift more than 10 pounds, and she could not lift anything over her head (Tr. 39-40).

As for Plaintiff's mental impairments, Plaintiff testified that she had bipolar disorder, which caused extreme panic attacks, night terrors, extreme insomnia, and problems dealing with people because they made her nervous (Tr. 35). Plaintiff further testified to experiencing racing thoughts and constant mood swings (Tr. 36-37). Plaintiff had problems dressing and bathing and would often have to lay down and rest her back for at least two hours during the day (Tr. 38).

### B. Medical Records[1]

Plaintiff visited JFCS Behavioral for the first time on December 7, 2007 (Tr. 324-42). The intake form described Plaintiff as presenting with generally good responses to questions, she was mostly orderly and calm with a relaxed mood and appropriate affect, but she had poor judgment and impulse control based on a reported incident (Tr. 324-42). Plaintiff was diagnosed with bipolar disorder, panic disorder without agoraphobia, and alcohol dependence (Tr. 324-42). Plaintiff returned to JFCS for a psychiatric evaluation on January 30, 2008 (Tr. 344-46). Plaintiff was oriented, with normal alertness and speech, and she was diagnosed with alcohol dependence, panic disorder without agoraphobia, bipolar disorder as reported by Plaintiff, and borderline personality disorder (Tr. 344-46). It appears that Plaintiff may have declined treatment from JFCS, as the risks of doing so were discussed with her, and Plaintiff would not address substance abuse issues (Tr. 344-46).

---

[1] Plaintiff does not challenge the ALJ's determination that she was not disabled as it pertains to her physical impairments; therefore, the overview of medical records will focus solely on the records outlining Plaintiff's mental impairments.

Dr. Randall Garland completed a psychiatric assessment of Plaintiff on March 26, 2008 (Tr. 355-72). Dr. Garland noted Plaintiff's diagnoses of bipolar disorder, anxiety state unspecified, and alcohol abuse (Tr. 358-363). In his medical residual functional capacity ("RFC") assessment, Dr. Garland opined that Plaintiff was moderately limited in her ability to understand and remember detailed instructions, carry out detailed instructions, maintain attention and concentration for extended periods, perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, and complete a normal workday and workweek without interruptions from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods (Tr. 369-70). Otherwise, Plaintiff was not significantly limited (Tr. 369-70). Dr. Garland opined that Plaintiff would be able to meet the basic mental demands of competitive, remunerative, unskilled work on a sustained basis and would be able to, among other things, respond appropriately to supervision, coworkers and work situations (Tr. 371). On October 9, 2006, Dr. Hubert Estes affirmed Dr. Garland's mental assessment of Plaintiff (Tr. 597).

Plaintiff first visited Volunteer Behavioral Health Services ("VBHS") on December 4, 2008 (Tr. 609-13). An intake form filled out by Linda Maynard noted that Plaintiff had marked limitations in interpersonal functioning because she was self-isolating, she had moderate limitations in concentration, task performance, and pace because of difficulty concentrating and completing tasks, and she had moderate limitations in adaptation to change due to difficulty with change (Tr. 611-13). Ms. Maynard further noted these periods of severe dysfunction had lasted for six months or longer, designated Plaintiff as belonging to a group of persons with severe and persistent mental

4

illness, and assigned a global assessment of functioning ("GAF") score of 50 (Tr. 611-13).[2] Plaintiff saw APRN Pamela West on the same date and reported a recent manic phase where she did not sleep for 72 hours and had racing thoughts and impulsive behavior (Tr. 609-10). Plaintiff reported drinking to slow herself down and reported drinking all day on occasion, but usually would only have a glass of wine at dinner (Tr. 609-10). Plaintiff was anxious and cooperative, with normal thought control and perception (Tr. 609-10). APRN West assigned Plaintiff a GAF of 50 and noted her diagnoses as bipolar disorder and depressive disorder (Tr. 609-10).

Plaintiff saw APRN West again on December 16, 2008 and reported poor sleep and problems with her current medications, but she also stated she was not drinking (Tr. 607-08). APRN West noted Plaintiff had a neat appearance but her mood was irritable, and assigned a GAF score of 50 (Tr. 607-08). During a visit on January 15, 2009, Plaintiff reported getting sick thinking about being around the crowd of people in the waiting room and complained of social anxiety and depression (Tr. 605). Plaintiff did not want to talk to a therapist about her family issues and history of abuse (Tr. 605-06). APRN West noted Plaintiff had normal speech and organized thoughts and assigned a GAF of 50, but noted a slight positive change in Plaintiff's level of functioning (Tr. 605-06). On February 9, 2009, Plaintiff saw APRN West again (Tr. 603-04). Plaintiff reported feeling better as the waiting room was not full that day (Tr. 603). Plaintiff complained of anxiety and panic attacks but refused to do therapy (Tr. 603). APRN West noted Plaintiff had a normal affect and normal speech, thought content and perception (Tr. 603). She assigned Plaintiff a GAF of 50 but again

---

[2] A GAF score between 41 and 50 corresponds to a "serious" psychological impairment; a score between 51 and 60 corresponds to a "moderate" impairment; and a score between 61 and 70 corresponds to a "mild" impairment. *Nowlen v. Comm'r of Soc. Sec.*, 277 F. Supp. 2d 718, 726 (E.D. Mich. 2003).

noted a slight positive change in Plaintiff's level of functioning (Tr. 603-04).

The last record from VBHS is dated April 21, 2009, when Plaintiff reported sleeping only a couple hours a night (Tr. 601-02). APRN West noted Plaintiff had a normal affect and normal speech, thought content and perception (Tr. 601). APRN West again assigned Plaintiff a GAF of 50 and again noted a slight positive change in Plaintiff's level of functioning (Tr. 601-02).

### C. Vocational Expert Testimony

At the hearing, the ALJ posed a hypothetical question to a vocational expert ("VE") to identify light work, unskilled jobs that did not include extensive contact with supervisors, coworkers, and the public (Tr. 42). The VE testified that one such job would be a silver wrapper, where an individual would wrap silverware in a large operation dining setting (Tr. 43). There were over 98,000 jobs nationally and over 1,600 regionally (Tr. 44). The VE next identified flower picker and vine pruner as possible jobs, with over 73,000 jobs nationally and 1,400 regionally (Tr. 44). Finally, the VE testified that a cleaner/night janitor could fit the ALJ's hypothetical question, with 220,000 jobs nationally and 4,000 regionally (Tr. 45).

In response to questions by Plaintiff's counsel, the VE testified that if Plaintiff would have a pattern of more than two absences a month, there would be no jobs available (Tr. 49). The VE further testified that if Plaintiff's physical impairments required her to rest for two consecutive hours in a workday and affected her ability to sit for more than five to 10 minutes, no jobs would be available (Tr. 49-50).

## III. ELIGIBILITY AND THE ALJ'S FINDINGS

### A. Eligibility for Disability Benefits

The Social Security Administration determines eligibility for disability benefits by following

6

a five-step process. 20 C.F.R. § 404.1520(a)(4)(I-v).

> 1) If the claimant is doing substantial gainful activity, the claimant is not disabled.
>
> 2) If the claimant does not have a severe medically determinable physical or mental impairment-i.e., an impairment that significantly limits his or her physical or mental ability to do basic work activities-the claimant is not disabled.
>
> 3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.
>
> 4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.
>
> 5) If the claimant can make an adjustment to other work, the claimant is not disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647 (6th Cir. 2009). The claimant bears the burden to show the extent of his impairments, but at step five, the Commissioner bears the burden to show that, notwithstanding those impairments, there are jobs the claimant is capable of performing. *See Walters v. Comm'r of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997).

### B. The ALJ's Findings

At step one of sequential evaluation process, the ALJ found Plaintiff had not engaged in any substantial gainful activity since November 26, 2007, the date of her application (Tr. 18). At step two, the ALJ found Plaintiff had "severe impairments" including: degenerative disc disease, fibromyalgia, and bipolar disorder (Tr. 18). The ALJ determined these impairments were severe because they could have more than a minimal effect on Plaintiff's ability to work (Tr. 18). At step three, the ALJ found Plaintiff did not have any impairment or combination of impairments to meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Pt. 404,

7

Subpt. P, App'x. 1 (Tr. 18). More specifically, the ALJ found Plaintiff's mental impairments did not meet or medically equal the criteria of 12.04, 12.06, or 12.09 (Tr. 18). The ALJ next determined Plaintiff had the RFC to perform a full range of unskilled light work, but was limited to occasional contact with supervisors, co-workers, and the general public (Tr. 19). At step four, the ALJ found that Plaintiff had no past relevant work, that she was age 46, a younger individual, as of the date of her application for benefits, that she had a high school education, and that she was able to communicate in English (Tr. 22). At step five, the ALJ considered Plaintiff's age, education, work experience, and RFC and determined there were jobs existing in significant numbers in the national economy which Plaintiff could perform (Tr. 23). This finding led to the ALJ's determination that Plaintiff was not under a disability as of November 26, 2007 (Tr. 23).

## IV.     ANALYSIS

Plaintiff asserts two arguments to support her contention that the ALJ's decision is not supported by substantial evidence. First, Plaintiff argues that the ALJ failed to properly evaluate the opinion of APRN West, one of Plaintiff's treating sources. Plaintiff asserts the ALJ erred in giving little weight to APRN West's opinion and did not provide sufficient reasons for the weight afforded her opinion. Second, Plaintiff argues that the ALJ erred in finding Plaintiff could perform unskilled, light work with occasional contact with supervisors, coworkers, and the general public based on her significant mental limitations.

### A.     Standard of Review

A court must affirm the Commissioner's decision unless it rests on an incorrect legal standard or is unsupported by substantial evidence. 42 U.S.C. § 405(g); *Warner v. Comm'r of Soc. Sec.*, 375 F.3d 387, 390 (6th Cir. 2004) (quoting *Walters*, 127 F.3d at 528). Substantial evidence

8

is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Garner v. Heckler*, 745 F.2d 383, 388 (6th Cir. 1984) (quoting *Richardson v. Perales*, 402 U.S. 389, 401 (1971)). Furthermore, the evidence must be "substantial" in light of the record as a whole, "tak[ing] into account whatever in the record fairly detracts from its weight." *Id.* (internal quotes omitted). If there is substantial evidence to support the Commissioner's findings, they should be affirmed, even if the court might have decided facts differently, or if substantial evidence would also have supported other findings. *Smith v. Chater*, 99 F.3d 780, 782 (6th Cir. 1996); *Ross v. Richardson*, 440 F.2d 690, 691 (6th Cir. 1971). The court may not re-weigh evidence, resolve conflicts in evidence, or decide questions of credibility. *Garner*, 745 F.2d at 387. The substantial evidence standard allows considerable latitude to administrative decisionmakers because it presupposes there is a zone of choice within which the decisionmakers can go either way, without interference by the courts. *Felisky v. Bowen*, 35 F.3d 1027, 1035 (6th Cir. 1994).

The court may consider any evidence in the record, regardless of whether it has been cited by the ALJ. *Heston v. Comm'r of Soc. Sec.*, 245 F.3d 528, 535 (6th Cir. 2001). The court may not, however, consider any evidence which was not before the ALJ for purposes of substantial evidence review. *Foster v. Halter*, 279 F.3d 348, 357 (6th Cir. 2001). Furthermore, the court is under no obligation to scour the record for errors not identified by the claimant, *Howington v. Astrue*, No. 2:08-CV-189, 2009 WL 2579620, at *6 (E.D. Tenn. Aug. 18, 2009) (stating that assignments of error not made by claimant were waived), and arguments not raised and supported in more than a perfunctory manner may be deemed waived, *Woods v. Comm'r of Soc. Sec.*, No. 1:08-CV-651, 2009 WL 3153153, at *7 (W.D. Mich. Sep. 29, 2009) (citing *McPherson v. Kelsey*, 125 F.3d 989, 995-96 (6th Cir. 1997)) (noting that conclusory claim of error without further argument or authority may

be considered waived).

B.     **Opinion of APRN West**

Plaintiff first argues the ALJ did not properly evaluate APRN West's assessments and instead simply summarized her notes, along with conclusions about Plaintiff's functional limitations, without discussing the weight afforded to these opinions or good reasons for that weight [Doc. 10 at PageID#: 26-27]. The Commissioner asserts in response that APRN West is not a treating source and is instead classified within the category of "other sources," such that the ALJ *may* use evidence from such other sources, but it is not mandated or required to do so [Doc. 12 at PageID#: 37]. The Commissioner also contends the ALJ did consider APRN West's notes and the intake assessment at VBHS and, while he did not explicitly discuss the weight afforded to these records, his discussion of Dr. Garland's assessment makes clear that notes from VBHS were properly only given weight to the extent they were consistent with Dr. Garland's assessment [*id.* at PageID#: 38]. The Commissioner argues that Dr. Garland's assessment was better supported by evidence in the record and observations by Plaintiff's treating physicians, than was APRN West's GAF scores of 50, which were inconsistent with other evidence in the record and her own treatment notes [*id.* at PageID#: 38-40].

The law governing the weight to be given to a treating physician's opinion, often referred

to as the treating source rule,[3] is not properly at issue here because the regulations are clear that a "treating source" means "your own physician, psychologist, *or other acceptable medical source* who provides you, or has provided you, with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you." 20 C.F.R. § 404.1502. Acceptable medical sources are defined in 20 C.F.R. § 416.913(a) to include licensed physicians and licensed psychologists. In contrast, 20 C.F.R. § 416.913(d) discusses "other sources," which include nurse practitioners, physicians' assistants, chiropractors, educational personnel, and non-medical sources. *Id.* The "other sources" provision initially states "we *may* use evidence from other sources to show the severity of your impairment(s) and how it affects your ability to work." *Id.*

APRN West does not qualify as an acceptable medical source and, instead, must be classified as an "other source" under the applicable regulations. Therefore, the treating source rule does not apply to her, and the ALJ was not required to assign weight to her assessment of Plaintiff or explain

---

[3] A treating physician's opinion is entitled to complete deference if it is "well-supported by medically acceptable clinical and laboratory diagnostic techniques" and "not inconsistent with the other substantial evidence in [the] case record." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004) (quoting 20 C.F.R. § 404.1527(d)(2)) (alteration in original). Even if the ALJ determines that the treating source's opinion is not entitled to controlling weight, the opinion is still entitled to substantial deference commensurate with "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source." 20 C.F.R. § 404.1527(d)(2); SSR 96-2p; *Simpson v. Comm'r of Soc. Sec.*, 344 F. App'x 181, 192 (6th Cir. 2009). The ALJ is not required to explain how he considered each of these factors, but must nonetheless give "good reasons" for rejecting or discounting a treating physician's opinion. *Francis v. Comm'r of Soc. Sec.*, 414 F. App'x 802, 804 (6th Cir. 2011). These reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 545 (6th Cir. 2004) (quoting SSR 96-2p). Failure to give good reasons requires remand, even if the ALJ's decision is otherwise supported by substantial evidence, unless the error is de minimis. *Id.* at 544, 547.

11

reasons for giving the assessment less than controlling weight. Instead, the ALJ could consider her notes in the context of factors such as how long APRN West treated Plaintiff, how consistent her assessment was with other evidence in the record, and how well APRN West explained her assessment. *See Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 541 (6th Cir. 2007) (citing SSR 06-03p).

In his decision, the ALJ summarized the records from VBHS, discussed Dr. Garland's assessment of Plaintiff, and gave significant weight to Dr. Garland's assessment (Tr. 21-22). The ALJ noted that he would, however, give Plaintiff the benefit of the doubt as to her interpersonal or functioning difficulties and would incorporate those limitations in the RFC determination (Tr. 22). I **FIND** the ALJ appropriately evaluated the records from VBHS, especially since APRN West's treatment of Plaintiff spanned only four months and her assignment of a GAF score of 50 is not entirely consistent with her own treatment notes or other evidence in the record. It appears the initial intake assessment by Linda Maynard may have been based primarily on Plaintiff's self-reports as to the severity and persistence of her mental symptoms. Furthermore, APRN West's treatment notes, which are not very detailed, indicate Plaintiff generally had a normal mood, normal affect, normal speech and normal thought perception, especially towards the later of her five sessions (Tr. 601, 603, 605). In addition, as the Commissioner argues, records from Plaintiff's primary care physician and Mesa Pain Management Center over the course of several months indicate that Plaintiff's mood was generally normal and that she was responsive and calm, with appropriate affect, judgment and insight (Tr. 223, 225-27, 229-31, 232-41, 269, 275, 282, 289, 296, 303, 310, 375, 382, 389, 480-84).

The ALJ was not required to give weight to APRN West's assessment of Plaintiff because

she is an "other source"; however, the ALJ did summarize the applicable records and gave Plaintiff the benefit of the doubt as to her subjective mental complaints (many of which were reflected in APRN West's notes) and incorporated these subjective complaints into his RFC determination. I **CONCLUDE** the ALJ did not commit error in his consideration of APRN West's assessment of Plaintiff.

        C.       **The RFC Determination and Existence of Jobs**

Plaintiff next argues that if the ALJ had adopted the medical assessments completed by Plaintiff's treating sources at VBHS, he would have found Plaintiff disabled because she is markedly limited in her social functioning ability [Doc. 10 at PageID#: 27]. Instead, the ALJ determined Plaintiff could work in an environment where she would have occasional contact with supervisors, coworkers, and the general public [*id.*]. Plaintiff further argues that at least two of the jobs identified by the VE, silverware wrapper and flower picker, require customer service as part of the job description, which Plaintiff's social functioning level cannot accommodate based on the assessments made by VBHS [*id.* at 27-28].

The Commissioner argues the ALJ's RFC determination is supported by substantial evidence because it squares with the assessment of Dr. Garland, which was affirmed by Dr. Estes, and there are no competing opinions from any acceptable medical source in the record [Doc. 12 at PageID#: 42-43]. Moreover, the Commissioner asserts the ALJ gave Plaintiff the benefit of the doubt by limiting her contact with supervisors, coworkers, and the general public in his RFC, given that she was able to interact appropriately with her physicians [*id.* at PageID#: 43]. As to Plaintiff's argument with respect to the jobs the VE identified, the Commissioner asserts that the Dictionary of Occupational Titles states the silverware wrapper and flower picker positions are considered "not

13

significant" with regard to people [*id.* at PageID#: 44].

I **FIND** no error in the ALJ's RFC determination and subsequent conclusion that jobs exist in the national economy that an individual with Plaintiff's RFC could perform. As noted above, the records from VBHS span only four months and involve only five sessions with Plaintiff. The entirety of Plaintiff's records as to her mental impairments do not, as Plaintiff argues, establish severe deficiencies in social functioning. The only indication of such severity is in Ms. Maynard's intake form from VBHS, where she noted Plaintiff had marked limitations in interpersonal functioning because she was self-isolating. The consistently assigned GAF score of 50, which may indicate serious symptoms, is on the border between serious and moderate symptoms (Tr. 611). This GAF score, however, was not well explained in APRN West's treatment notes, and it is unclear that Ms. Maynard's intake form involved any evaluation of Plaintiff beyond her self-reported complaints.

Instead, medical records spanning approximately two years indicate Plaintiff had no apparent problems interacting with her treating physicians. Plaintiff testified that people made her extremely nervous, and the ALJ gave Plaintiff the benefit of the doubt as to this testimony and the VBHS records by incorporating only occasional contact with people into his RFC determination. The ALJ reasonably gave significant weight to the assessment of Dr. Garland, which was consistent with the evidence in the record and is the only opinion from an acceptable medical source. Dr. Garland opined Plaintiff would be able to respond appropriately to supervision and coworkers (Tr. 371).

As such, the evidence in the record does not support severe impairments in social functioning and the ALJ's RFC is supported by substantial evidence. Moreover, the jobs identified by the VE would accommodate the ALJ's RFC determination. Even if the Court discounted the two jobs which Plaintiff challenges, the remaining jobs of vine pruner and cleaner/night janitor would still represent

14

a significant number of jobs in the national economy, as contended by the Commissioner [Doc. 12 at PageID#: 44]. Accordingly, I **CONCLUDE** the ALJ's RFC determination that Plaintiff could perform light, unskilled work with only occasional contact with supervisors, coworkers and the general public is supported by substantial evidence. I further **CONCLUDE** the ALJ's finding that jobs exist in significant numbers in the national economy that Plaintiff could perform is supported by substantial evidence.

## V. CONCLUSION

Having carefully reviewed the administrative record and the parties' arguments, I **RECOMMEND** that:[4]

    (1)    Plaintiff's motion for judgment on the pleadings [Doc. 9] be **DENIED**.

    (2)    The Commissioner's motion for summary judgment [Doc. 11] be **GRANTED**.

    (3)    The Commissioner's decision denying benefits be **AFFIRMED**.

                                              s/ *Susan K. Lee*
                                              SUSAN K. LEE
                                              UNITED STATES MAGISTRATE JUDGE

---

[4] Any objections to this report and recommendation must be served and filed within fourteen (14) days after service of a copy of this recommended disposition on the objecting party. Such objections must conform to the requirements of Rule 72(b) of the Federal Rules of Civil Procedure. Failure to file objections within the time specified waives the right to appeal the district court's order. *Thomas v. Arn*, 474 U.S. 140, 149 n.7 (1985). The district court need not provide *de novo* review where objections to this report and recommendation are frivolous, conclusive and general. *Mira v. Marshall*, 806 F.2d 636, 637 (6th Cir. 1986). Only specific objections are reserved for appellate review. *Smith v. Detroit Fed'n of Teachers*, 829 F.2d 1370, 1373 (6th Cir. 1987).